J-A01029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOHN R. BARNES, JR. | |
| Appellant | No. 3437 EDA 2014 |

Appeal from the Judgment of Sentence March 24, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0002596-2013

BEFORE:  LAZARUS, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                     **FILED March 14, 2016**

John R. Barnes, Jr., appeals from the judgment of sentence imposed on March 24, 2014, in the Court of Common Pleas of Bucks County, following his conviction by a jury of one count of indecent assault of an unconscious person.[1]  Pursuant to statute, as a repeat sexual offender, Barnes received the mandatory minimum sentence of 25-50 years' incarceration.  In this timely appeal, Barnes contends: (1) the trial court erred in granting a mistrial and failing to enter or direct a verdict of not guilty; (2) the verdict was against the weight of the evidence; and (3) the mandatory minimum sentence violates Article 1, § 13 of the Pennsylvania

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3126(a)(4).

Constitution barring cruel punishment. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

The facts and relevant procedural history of this matter are simply related:

> On the evening of March 18, 2013, [Barnes] and his female cousin, M.D., were overnight guests at the home of M.D.'s mother in Bensalem, Bucks County, Pennsylvania. The following morning, M.D. was awakened by the feeling of someone with their hand inside of her underwear and touching her vagina. M.D. then opened her eyes and saw that it was [Barnes]. When M.D. made eye contact with [Barnes], [Barnes] removed his hand from M.D.'s underwear and walked from the living room into the bathroom. M.D. then went into another room to call the police. When the police arrived, [Barnes] was placed under arrest.
>
> A jury trial was initially held for this case on August 20, 2013 which resulted in a mistrial. [Barnes] was subsequently convicted of one count of Indecent Assault (of an unconscious person) after a jury trial on September 30, 2013. Sentencing was deferred for a Sexual Offenders Assessment Board evaluation, which determined that [Barnes] was a sexually violent predator. [Barnes] was sentenced on March 24, 2014 to the mandatory minimum sentence of twenty-five to fifty years incarceration in a state correctional institution. [Barnes] then filed a multi-part post-sentence motion with this Court seeking an arrest of judgment, a new trial, and a modified sentence. This Court held a hearing on November 5, 2014 and denied those motions. [Barnes] timely filed Notice of Appeal to the Superior Court of Pennsylvania.

Trial Court Opinion, 4/14/2015, at 1-2 (footnotes omitted).

Barnes's claims of the trial court improperly granting a mistrial and failing to direct a verdict in his favor are related. Therefore, we will address them together.

Our standard of review regarding the grant of a mistrial is as follows:

> It is well settled that when, without defense consent, a jury is discharged for failure to reach a verdict, retrial is permissible if the discharge was manifestly necessary. "Manifest necessity" is the test for appellate review of the trial judge's exercise of his discretion in declaring a mistrial without defendant's consent.
>
> The genuine inability of a jury to agree on a verdict constitutes a manifest necessity to declare a mistrial, even over a defendant's objection, without offending the double jeopardy clause. A genuine inability of a jury to agree on a verdict exists if there is no reasonable probability of agreement among the jurors. On appellate review of the lower court's finding of manifest necessity, the circumstances of the trial must be examined to determine if any doubt exists regarding the propriety of the exercise of discretion by the lower court.
>
> The length of time that a jury should deliberate is not for the jury to determine. Instead, this decision is best left to the sound discretion of the trial judge. A determination as to whether a verdict cannot be reached so that manifest necessity for retrial exists depends on the number, complexity, and gravity of charges, and the volume of evidence presented, and rests largely within the discretion of the trial court. The trial judge's decision is reversible only if there is an abuse of discretion or if a verdict is the product of an overworked or fatigued jury. In ***Commonwealth v. Bartolomucci,*** [362 A.2d 234 (Pa. 1976)], the supreme court emphasized the importance of having the court below inquire directly of the jury, either individually or through the foreman, about the possibility of the deadlock being overcome by further deliberations. Such an inquiry serves to remove any doubt as to the existence of a deadlock and the hopelessness of breaking it.

***Commonwealth v. Smith***, 471 A.2d 510, 512-13 (Pa. Super. 1984)

(citations omitted).

Our review of the failure to grant a directed verdict is subject to the following standard of review:

- 3 -

> The test to be utilized in determining if a directed verdict should be granted is "if the prosecution's evidence, and all inferences arising therefrom, considered in the light most favorable to the prosecution are insufficient to prove beyond a reasonable doubt that the accused is guilty of the crimes charged." (Citations omitted) *Commonwealth v. Finley*, 477 Pa. 382, 384, 383 A.2d 1259, 1260 (1978). We note that the preceding standard is equivalent to that used to rule on a sufficiency of the evidence argument. *See, e.g., Commonwealth v. Harrison*, 289 Pa.Super. 126, 432 A.2d 1083 (1981).

*Commonwealth v. Potts*, 460 A.2d 1127, 1138 (Pa. Super. 1983).

Barnes's first trial took place from August 19 to August 21, 2013. Evidence was presented on the 19th, the jury was charged in the morning of August 20 and they were sent to deliberate before lunch. During the lunch recess, the jury sent a note to the court stating deliberations were at an impasse, the votes being 11 to 1.[2] The trial judge instructed them in the usual manner to continue deliberating, being respectful of others, listening to others, but not to change ones legitimately held beliefs simply to reach a verdict. Sometime later, the jury once again reported it was deadlocked. The trial court instructed them to continue deliberating. Finally, at 4:30 p.m., they reported being deadlocked for a third time. The jury was reinstructed and released for the night.

---

[2] While Barnes asserts the vote was 11-1 in favor of acquittal, the certified record does not reflect the details of the jurors' votes. When the trial court polled the jury as to whether they were deadlocked, the jury was specifically told not to reveal how they voted.

The jury returned the next day and continued deliberations, asking to be reinstructed on the concept of reasonable doubt. Shortly after noon, for the fourth time, the jury reported it was deadlocked. This time, the trial judge polled the jury to determine if there was any evidence they believed they needed to review and whether anyone thought further deliberations could produce a verdict. One juror stated she believed further deliberations would be helpful and the jury was thereafter instructed to continue deliberations. A short time later, the jury reported that the lone juror had misunderstood the judge's question, and that she actually agreed with the other jurors that further deliberations would be useless. Barnes requested that the jury either be allowed to continue or that the trial judge direct the jury to acquit him. The trial court declined Barnes's request, declared a mistrial, and dismissed the jury.

Our review of the certified record discloses no abuse of discretion in declaring the mistrial. The jury had deliberated longer than the presentation of evidence. In deliberating, the jury told the trial court four times that they would be unable to reach a verdict. Pursuant to **Smith**, **supra**, the trial judge questioned the jury foreman regarding their ability to reach a verdict and then polled the jurors to determine if they all agreed with the foreman's answers. When one of the jurors, mistakenly as it turned out, said she disagreed and that further deliberations might be successful, the trial judge sent them back into deliberations. It was only after being informed that the

lone juror had misunderstood the questions posed by the trial judge that the mistrial was granted. We believe this record confirms the manifest necessity of granting the mistrial.

Regarding Barnes's request for a directed verdict, assuming *arguendo* that the jury was deadlocked 11-1 in favor of acquittal, Barnes has provided no case law to support his position that he was entitled to a directed verdict. Jury verdicts in criminal trials are required to be unanimous. **See** Pa.R.Crim.P. 648(B). An 11-1 jury vote does not represent a valid, unanimous verdict nor does it suggest that the evidence is such that no two minds could disagree as to the outcome. Having reviewed the notes of testimony from both trials, we will not second-guess the trial court. Barnes was not entitled to a directed verdict.

Barnes's next claim is that the second jury's guilty verdict was against the weight of the evidence.

Our standards of review for a claim the verdict is against the weight of the evidence are well settled:

> The Supreme Court has set forth the following standard of review for weight of the evidence claims:
>
> > The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
> >
> > * * *
> > A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the

- 6 -

discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

* * *

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

**Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations and quotation omitted). In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Commonwealth v. Sullivan**, 820 A.2d 795, 806 (Pa. Super. 2003)(citation omitted).

**Commonwealth v. Roberts**, ___ A.3d ___, 2016 PA Super 22 (February 2, 2016).

Specifically, Barnes argues the Commonwealth's evidence is unworthy of belief because the complaining witness's testimony was inconsistent and there was no forensic evidence to support her testimony. These arguments are unavailing. The trial court noted that the inconsistencies in the complaining witness's testimony concerned the timing of her phone call to the police on the morning of the incident. However, the substance of her testimony, that she awoke when Barnes put a hand inside her underwear and started fondling her, remained uncontradicted. Further, we note there

- 7 -

is no requirement the Commonwealth present forensic evidence. *See Commonwealth v. Gibson*, 951 A.2d 1110, 1140 (Pa. 2008) (there is no constitutional requirement for the police to conduct a forensic analysis of evidence). Barnes simply makes a bald assertion that the complaining witness's testimony was rendered suspect by the lack of forensic support. However, given the nature of the allegations against him, it is not at all clear what forensic evidence he expected to have been found.

The evidence presented to the jury was not so "tenuous, vague or uncertain that the verdict shocks the conscious of the [trial] court." *Commonwealth v. Roberts*, *supra*. The trial court opined, "there was nothing about the verdict which 'shocked one's sense of justice.'" Trial Court Opinion at 8. Applying our standard of review, we conclude the trial court did not abuse its discretion in denying Barnes relief on this claim.

In his final claim, Barnes argues the 25-50 year mandatory sentence he received, pursuant to 42 Pa.C.S. § 9718.2, violates the proportionality principles found in the Pennsylvania Constitution.[3] Article I, Section 13 of the Pennsylvania Constitution states, in its entirety:

---

[3] We are aware the P.J.E. Stevens authored an opinion in *Commonwealth v. Colon-Plaza*, ___ A.3d ___, 2016 PA Super 50 (2/25/2015), which determined 42 Pa.C.S. § 9718.2 is not unconstitutional. However, the appellant in *Colon-Plaza* did raise his argument solely in terms of the Pennsylvania Constitution as Barnes has.

Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted.

PA Const., Art. I, § 13.[4]

Regarding the constitutionality of a statute, at the outset, we note:

The constitutionality of a statute is a pure question of law; our standard of review is *de novo* and our scope of review is plenary. In examining the constitutionality of a statute, we bear in mind the following legal precepts:

The Pennsylvania Supreme Court has consistently held that enactments of the General Assembly enjoy a strong presumption of constitutionality. All doubts are to be resolved in favor of sustaining the constitutionality of the legislation. "[N]othing but a clear violation of the Constitution—a clear usurpation of power prohibited—will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void." In other words, "we are obliged to exercise every reasonable attempt to vindicate the constitutionality of a statute and uphold its provisions." "The right of the judiciary to declare a statute void, and to arrest its execution, is one which, in the opinion of all courts, is coupled with responsibilities so grave that it is never to be exercised except in very clear cases." Moreover, one of the most firmly established principles of our law is that the challenging party must prove the act "clearly, palpably and plainly" violates the constitution.

Finally, we note that:

The power of judicial review must not be used as a means by which the courts might substitute its judgment as to public policy for that of the legislature. The role of the

_____

[4] We note the Pennsylvania Constitution differs from the Unites States Constitution. The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel **and unusual** punishments inflicted." U.S. CONST., amend. VIII (emphasis added). Barnes has only claimed his sentence violates the Pennsylvania Constitution.

> judiciary is not to question the wisdom of the action of [the] legislative body, but only to see that it passes constitutional muster.

***Commonwealth v. Elia***, 83 A.3d 254, 266-67 (Pa. Super. 2013) (citations omitted).

As noted, Barnes was convicted of one count of indecent assault, 18 Pa.C.S. § 3126.4(a)(4). This crime is classified as a first-degree misdemeanor and is subject to a maximum term of incarceration of five years. ***See*** 18 Pa.C.S. §§ 106(b)(6); 1104(1). We also note that § 3126.4(a)(4) is classified as a Tier II sexual offense for purposes of the registry of sexually violent offenders. ***See*** 42 Pa.C.S. § 9799.14(c)(1.3). This is significant because conviction of a crime included on this list of sexual offenses renders a person subject to the mandatory minimum sentencing for recidivists located at 42 Pa.C.S § 9718.2(a)(1), which is the basis of Barnes's 25-50 year sentence.

The gist of Barnes's argument is that the mandatory sentencing scheme found in section 9718.2 is an impermissible "one-size fits all" statute that does not take into consideration the severity of the underlying convictions.[5]

Section 9718.2 states, in relevant part:

**(a) Mandatory sentence.—**

_____

[5] Although there are some elements of Barnes's argument that appear to be a facial challenge to the constitutionality of the statute, we believe that ultimately Barnes is making an "as applied" challenge.

- 10 -

> (1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.

42 Pa.C.S. § 9718.2(a)(1).

Section 9799.14 provides a list of 48 state and federal crimes, as well as reference to similar crimes from other states and in military justice, that require the offender to register as a sexual offender. These crimes range from video voyeurism, 18 U.S.C. § 1801, to kidnapping and rape, 42 Pa.C.S. §§ 2901(a.1) and 3121, respectively. Provided the offender has a prior conviction for any of the listed crimes, a subsequent conviction of any of these crimes requires the imposition of a 25-50 year term of incarceration. Accordingly, if a person is convicted twice of violating 18 Pa.C.S. § 7507.1, invasion of privacy, a third-degree misdemeanor,[6] that person must be sentenced to a minimum of 25-50 years' incarceration. That would be the same mandatory sentence for a person convicted twice of rape. Similarly,

---

[6] 18 Pa.C.S. § 7507.1 is a Tier I offense pursuant to 42 Pa.C.S. § 9799.14(b)(10). A single intimate photograph of a person taken without that person's permission is a third-degree misdemeanor. **See** 18 Pa.C.S. § 7507.1(a),(a.1), and (b).

Barnes argues that pursuant to 42 Pa.C.S. § 9714(a), (g) a convicted second offender of a violent crime, which includes 18 Pa.C.S. § 2507(c), manslaughter of a law enforcement officer, is subject to a mandatory term of 10-20 years' incarceration. Barnes claims, therefore, that the mandatory sentencing statute for sexual offenders violates the proportionality requirements of the Pennsylvania Constitution, Article I, § 13.

Barnes presents a facially appealing argument. However, our review of case law, although relevant cases are few, leads us to conclude the argument is unavailing.

First, we briefly examine Barnes's assertion that we conduct our review independent of federal constitutional law; the Pennsylvania Constitution providing the greater protection. Barnes relies heavily upon Former Chief Justice Castille's concurring opinion in ***Commonwealth v. Baker***, 78 A.3d 1044, 1053 (Pa. 2013), and ***Commonwealth v. Eisenberg***, 98 A.3d 1268 (Pa. 2014), in support of this approach. However, neither case explicitly stands for the proposition that Pennsylvania Constitution, Article I, § 13 provides greater protection to the citizenry than does the United States Constitution, Eighth Amendment. Indeed, our Supreme Court determined in ***Commonwealth v. Zettlemoyer,*** 454 A.2d 937, 967 (Pa. 1982) (abrogated on other grounds), that Article I, § 13, does

not provide any broader protection than the Eighth Amendment.[7]  Had our Supreme Court wished to overrule **Zettlemoyer** and the many prior cases that found no greater protection, it could have done so in **Eisenberg**, but it did not.  Accordingly, we do not accept Barnes's analytic approach.

Our review of Barnes's argument is guided by **Commonwealth v. Baker, supra**.  Baker was a second time offender, having twice been convicted of possession of child pornography. Accordingly, he was sentenced to the same 25-50 year mandatory sentence as Barnes.  Baker also raised a proportionality claim.  Our Supreme Court stated:

> A searching review of Eighth Amendment proportionality decisions shows that, with respect to recidivist sentencing schemes, successful challenges are extremely rare. Indeed, the only successful challenge was presented in **Solem** [**v. Helm**, 463 U.S. 277, 292, 103 S.Ct. 3001 (1983)], **supra**, wherein a South Dakota sentence of life imprisonment without the possibility of parole upon conviction of passing a bad check in the amount of $100 (the defendant's seventh non-violent felony conviction) was held to be unconstitutional. The High Court concluded that the impossibility of parole was a determinative factor in judging the punishment to be disproportionate to the crime. **Solem**, **supra** at 297-300, 103 S.Ct. 3001. The **Solem** Court specifically distinguished the matter from its prior decision in **Rummel v. Estelle**, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), in which the High Court determined that a Texas sentence of life imprisonment with the possibility of parole

---

[7] Several subsequent cases have also determined that the Eighth Amendment and Article I, § 13, in a variety of situations, are co-extensive. **See e.g**., **Jason v. Hendrick**, 503 A.2d 400, 404 n.10 (Pa. 1986); **Commonwealth v. Parker**, 718 A.2d 1266, 1268 (Pa. Super 1993); **Commonwealth v. Barnett**, 50 A.3d 176, 197 (Pa. Super. 2012); **Commonwealth v. Thompson**, 106 A.2d A.3d 742, 763 (Pa. Super. 2014).

after twelve years for a conviction of receiving $120.75 by false pretenses (the defendant's third non-violent felony conviction) did not contravene the Eighth Amendment. More recently, in **Ewing v. California**, 538 U.S. 11, 17-20, 30-31, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), the High Court upheld the constitutionality of a sentence of 25 years' to life imprisonment imposed for the theft of three golf clubs under California's "three strikes" law. In addition, outside the context of recidivist statutes, successful Eighth Amendment challenges to non-capital sentences are equally uncommon. **See Hutto v. Davis**, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (holding that sentence of 40 years' imprisonment for possession of 9 ounces of marijuana with intent to distribute did not contravene the Eighth Amendment); and **Harmelin** [**v. Michigan**, 501 U.S. 957, 1001, 111 S.Ct. 2680 (1991)], supra (holding that sentence of life imprisonment for possession of 650 grams of cocaine did not contravene the Eighth Amendment).

**Commonwealth v. Baker**, 78 A.3d at 1048-49.

Baker claimed that his sentence was grossly disproportionate in that his sentence for a mere possessory offense was the same as that of a person convicted of two separate offenses of forcibly raping a minor. Our Supreme Court rejected that argument determining that the prevention of sexual abuse of children was a governmental interest of "surpassing importance." **Id**. at 1051.

Admittedly, there is no such similar finding regarding indecent assault in the instant certified record. However, the specifics of Barnes's crimes and sentence are of record. Barnes's prior convictions were for rape, indecent assault and corruption of a minor. Barnes vaginally and anally raped an eight-year-old girl and sexually assaulted her numerous other times over the course of several months. He also indecently touched another seven-year-

old minor on one occasion. While in prison for those crimes, he was enrolled in at least two sexual offender programs. Shortly after his release from prison, and while he was still on probation, he committed the indecent assault, upon a sleeping person, that is the subject of his instant conviction. Of particular note, the psychologist who conducted the SOAB review, determined that Barnes had a pathologic lack of control of his sexual impulses, which led to the commission of his crimes and made it all the more likely that he would reoffend.

By enacting 42 Pa.C.S. § 9718.2, the Legislature has clearly determined that recidivism among sexual offenders is a particular problem, warranting application of the mandatory minimum sentencing statute and the admittedly severe consequences attendant thereto. We cannot say that the Legislature acted unconstitutionally in making this determination, nor can we say that the law, as applied to the specifics of Barnes's case, is unconstitutional.

Additionally, we note Former Chief Justice Castille's concurring opinion in **Baker**, in which he considers deviating from the federal model of analysis on the issue of cruel punishment:

> There is a colorable claim to be made that the federal test for gross disproportionality should not be followed lockstep in Pennsylvania, certainly at least insofar as it includes a federalism-based constraint that looks to sentences for similar offenses in other states. I recognize that the predicate question would be whether notions of proportionality are subsumed within the Pennsylvania proscription against cruelty at all. But, assuming that key question were answered affirmatively, a

defendant pursuing a Pennsylvania sentencing disproportionality claim may allege that comparative and proportional justice is an imperative within Pennsylvania's own borders, to be measured by Pennsylvania's comparative punishment scheme. In that circumstance, it may be that the existing Eighth Amendment approach does not sufficiently vindicate the state constitutional value at issue, where sentencing proportionality is at issue.

*Commonwealth v. Baker*, 78 A.3d at 1055.

In particular, he notes many of the same problems Barnes has raised regarding proportionality. Chief Justice Castille appeared to have been particularly concerned with the fact that the recidivist statute lacks recognition of the gravity of the crimes, as he stated:

In short, the overall legislative framework logically recognizes differences in levels of gravity as between sexually assaulting a child (most serious), the filming of such crimes (next most serious), and distributing or possessing the resulting child pornography (third most serious). The recidivist provision, however, draws no such distinctions, and treats the third most serious offense the same as the most serious one. An individual such as appellant, who is convicted of possessing child pornography for the second time, is mandated to serve a least five more years of prison time than the maximum term allowable for a first time child rapist.

*Commonwealth v. Baker*, 78 A.3d at 1057.

In light of Chief Justice Castille's commentary, Barnes's concerns regarding the proportionality of his sentence are substantial. In *Baker*, Chief Justice Castille invited the Legislature to revisit the mandatory sentencing scheme for sexual offenders. As far as the certified record in the instant matter reveals, the Legislature has declined to do so. Nonetheless, as noted above, *Baker* did not change our approach to Article I, § 13/Eighth

Amendment analysis. **Eisenberg**, **supra**, had the opportunity to formally announce the adoption Chief Justice Castille's analytical approach, but did not. Therefore, this Court may not ignore *stare decisis*. Accordingly, if there is to be change in the manner in which we examine Section 13, that change must originate with our Supreme Court or the Legislature.

Judgment of sentence affirmed.

Judge Lazarus joins the memorandum.

President Judge Emeritus Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/14/2016</u>