383 A.2d 1259

**COMMONWEALTH of Pennsylvania**

v.

**Tyrone W. FINLEY, Appellant (two cases).**

Supreme Court of Pennsylvania.

Submitted Jan. 9, 1978.

Decided March 23, 1978.

Joshua M. Briskin, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

MANDERINO, Justice.

Appellant, Tyrone W. Finley, was convicted by a jury of murder in the third degree, burglary, and criminal conspiracy. Post-verdict motions were denied, and a sentence of ten to twenty years imprisonment for the murder conviction was imposed, with a consecutive five to ten year sentence for the burglary conviction, and a concurrent five to ten year sentence for the conspiracy conviction. The judgment of sentence for murder was appealed directly to us, and the judgments of sentence for burglary and conspiracy were appealed to the Superior Court and transferred here.

At trial, after the prosecution had rested its case, appellant's motion for a directed verdict was denied. Appellant presented no evidence. In post-verdict motions, and again in this appeal, appellant contends that the trial court erred in denying his motion for a directed verdict.

A motion for a directed verdict should be granted if the prosecution's evidence, and all inferences arising therefrom, considered in the light most favorable to the prosecution are insufficient to prove beyond a reasonable doubt that the accused is guilty of the crimes charged. *Commonwealth v. Boone*, 467 Pa. 168, 354 A.2d 898 (1975); *Commonwealth v. Fostar*, 455 Pa. 216, 317 A.2d 188 (1974); *Commonwealth v. Pride*, 450 Pa. 557, 301 A.2d 582 (1973).

The prosecution contends that the evidence and the inferences arising therefrom in this case prove beyond a reasonable doubt that appellant conspired with others to kill and rob one Melvin Clark at his house. It is clear that the appellant

did not enter Clark's house, and was not physically present inside the house when the killing and robbery occurred. The prosecution's case therefore was based on the theory that appellant remained outside the house to act as a lookout and as driver of the getaway car.

■■ There is no doubt that one who acts as lookout and driver of a getaway car is as guilty as those who carry out the planned crimes. *Commonwealth v. Coyle*, 415 Pa. 379, 203 A.2d 782 (1964). The evidence, however, must be sufficient to establish that appellant had knowledge of the planned crimes and aided and abetted the commission of the crimes.

In this case appellant does not dispute that the evidence is sufficient to establish that he was in a car parked near the Clark's house during the time that he was killed and robbed. Appellant contends, however, that the evidence fails to establish that he had any knowledge of the planned crimes or that he was acting as a lookout or serving as the driver of the getaway car.

The prosecution presented the testimony of five witnesses. Four of these witnesses gave no testimony whatsoever which would tend to prove appellant's guilt. One of these witnesses was a police officer who arrived at the scene of the robbery-homicide after the participants in the crime had already left. Another of these witnesses was the victim's father, whose testimony was limited to identifying the victim. Another prosecution witness was a doctor employed by the medical examiner's office, who conducted the post mortem examination of the victim. This witness's testimony established only that the victim died of gunshot wounds. A fourth witness for the prosecution was a woman who lived with the victim and was present in the victim's home at the time the robbery-homicide took place. She was unable to identify any of the persons who were in the house, and gave no testimony implicating appellant.

The prosecution also presented the testimony of one Garfield Hedgeman, who was at the scene of the crimes when

they occurred. The case against the appellant rests solely on Hedgeman's testimony.

The prosecution's brief presented its summary of the evidence as follows:

"[D]efendant, accompanied by his mother, Dorothy Finley and a third party (Skeets) drove his automobile to the home of Melvin Clark, at 912 W. Silver Street and parked outside on the street. There they waited until one Garfield Hedgeman approached the victim's home. Skeets then left the car and gained entrance to Clark's home by following Hedgeman inside. Once inside Hedgeman attempted to buy drugs from Melvin Clark but learned that he was five dollars short. Skeets, who was not previously known to Hedgeman, then volunteered that Dorothy Finley would lend him five dollars. Skeets and Hedgeman then went to the waiting car which contained defendant, seated behind the wheel, and Dorothy Finley, his mother. Hedgeman, Skeets, and Dorothy Finley then returned to Clark's home while defendant remained in the car.

"Immediately after entering Clark's residence, Skeets shot Melvin Clark, and Hedgeman and Dorothy Finley chased after Clark's girlfriend Bernadette Durant, and her infant son, preventing them from fleeing through the kitchen door. Ms. Durant then ran upstairs and was pursued by both Hedgeman and Dorothy Finley. Hedgeman attempted to tie Ms. Durant up and tried to strangle her. Ms. Durant fled to a bedroom and secured it by pushing a chest of drawers against the door. Both Hedgeman and Dorothy Finley then searched the upstairs for narcotics. They then ran out of the house, passing Skeets and hearing two more shots on their way out. Skeets then followed and they all ran to the waiting car where defendant had started the car (or 'was getting ready to start up the car'). Dorothy Finley and Skeets got in; Hedgeman was given some narcotics but prevented from getting in; and the car sped away." (We could find no other name in the record for "Skeets").

If the testimony of Hedgeman and the reasonable inferences arising therefrom supported the above summary from the prosecution's brief, we would conclude that the evidence was sufficient to establish appellant's guilt beyond a reasonable doubt. The prosecution's summary, however, contains factual conclusions which are not supported either by the evidence or by any inferences drawn from the evidence.

The prosecution contends that appellant parked on the street and waited until Hedgeman approached the victim's home, and that when Hedgeman approached, "Skeets" left the car, intending to gain entrance to the victim's home by following Hedgeman inside. There is no evidence, however, that the car *waited* outside the victim's home for anyone. Hedgeman testified that as he approached the victim's home he saw a car parked nearby, from which "Skeets" exited and began walking behind Hedgeman toward the victim's home. Hedgeman's testimony was that although he noticed that the car across the street looked like one owned by his friend, Dot Finley, he walked on toward the victim's home for the purpose of purchasing narcotics and paid little attention to the car until he heard a car door close, at which time he noticed "Skeets" walking behind him. There is no evidence from which an inference can be drawn that the car was *waiting* for Hedgeman. There was no evidence as to how long the car had been there. It is sheer speculation to conclude that the car had been there for any length of time. So far as the evidence is concerned, the car could have arrived immediately before Hedgeman did.

Thus, the prosecution's ultimate conclusion in its summary that the car was *waiting* outside the victim's home for Hedgeman to arrive has no support in the evidence. That ultimate conclusion is obviously important to the prosecution because, had the car been waiting for any unusual period of time, it could be inferred that the occupants of the car—appellant, his mother, and "Skeets"—had a common purpose in waiting. Without the evidence that the car was waiting, the prosecution's theory is significantly weakened at its inception.

The prosecution's summary also draws the ultimate conclusion that "Skeets" was able to gain entrance to the victim's home only by following Hedgeman into the home. Yet there is nothing in the evidence to indicate anything more than that appellant's car and Hedgeman arrived on the scene at about the same time; and there is nothing to show that the fact that Hedgeman's approach to the victim's home occurred almost simultaneously with "Skeets's" exit from the car and *his* approach to the victim's home was anything more than coincidence.

When the victim opened the door and admitted Hedgeman and "Skeets" the first time, there is no evidence to indicate that the victim considered "Skeets" a stranger or an intruder. According to Hedgeman, he immediately began discussing a narcotics transaction with the victim while "Skeets" was present. There is no indication that the victim hesitated or was reluctant to discuss the narcotics transaction with "Skeets" present. There is no evidence as to whether "Skeets" was known or unknown to the victim. Under these circumstances, the prosecution's theory that appellant's car was waiting for Hedgeman's arrival so that "Skeets" could gain entrance to the victim's home by following Hedgeman is sheer speculation. When the victim told Hedgeman that he was short $5.00 for the purchase and Hedgeman returned with "Skeets" to the car to borrow $5.00 from appellant's mother, there was no evidence that any conversation occurred in the presence of the appellant except that concerning Hedgeman's need for a loan of $5.00 to complete the narcotics purchase. When ppellant's mother left the car and returned with Hedgeman and "Skeets" to the victim's home, there is no evidence that appellant had any knowledge of what would later occur inside the home.

The prosecution's summary also states that after the shooting and the robbery, when the participants returned to the car, appellant was inside, and had started the car (or "was getting ready to start up the car.") Hedgeman's testimony, however, was not that certain. In testifying about what happened when he, "Skeets," and appellant's mother got to the car Hedgeman said:

"Q. What happened when you got to the car?

A. The car had started up, I believe, or was getting ready to start up. I tried to get in the car. Instead there wasn't enough room or something to that effect. Somebody gave me drugs and I ran south on Hutchison Street.

Q. Now, did anybody get in the car?

A. As far as I know, everybody got in the car.

Q. Except yourself?

A. Yes.

Q. Was Tyrone Finley still in the car when you got back?

A. Well, I believe he was driving. I'm not sure.

Q. He was at the driver's seat?

A. I believe so. I didn't pay—I'm not sure if he was driving or not.

Q. When you saw him the first time, he was behind the driver's seat; is that correct?

A. Yes."

As can be seen from the above testimony, Hedgeman was not sure that appellant was driving, nor could he say whether the car was running. Even when he testified that the car "was getting ready to start up," he did not identify appellant as the individual in the driver's seat.

Evidence that appellant was in the automobile with the motor running at the time that his mother, Skeets, and Hedgeman returned to the car would have tended to support the prosecution's theory that appellant was ready for a getaway. Hedgeman's testimony on this point, however, was equivocal. He was not sure when the car was started, and he was not sure whether the appellant was the driver.

There is no doubt that the prosecution's version of what occurred can be fitted in to the facts that were established by the evidence. The fit, however, is grounded in guesswork and speculation rather than on inferences arising from established facts.

A conviction in a criminal case cannot stand if it must depend upon proof by a preponderance of the evidence.

The standard is a demanding one. The proof must be proof beyond a reasonable doubt.

■ We agree with appellant that although the prosecution's evidence establishes appellant's presence at the scene of the crime it does not establish more and without more the conviction cannot stand. Presence alone at the scene of a crime is not sufficient. *Commonwealth v. Leach*, 455 Pa. 448, 317 A.2d 293 (1974); *Commonwealth v. Pierce*, 437 Pa. 266, 263 A.2d 350 (1970); *Commonwealth v. Giovanetti*, 341 Pa. 345, 19 A.2d 119 (1941).

Judgment of Sentence reversed and the appellant is discharged.

POMEROY, J., dissents.