J-S78035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RASHEEM HALL | : | |
| | : | |
| Appellant | : | No. 891 EDA 2018 |

Appeal from the PCRA Order March 22, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0010569-2009,
CP-51-CR-0010570-2009

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED FEBRUARY 12, 2019**

Appellant, Rasheem Hall, appeals from the order entered in the Court of Common Pleas of Philadelphia County dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), Pa.C.S.A. §§ 9541-9546. Also before us is the application to withdraw as counsel filed by James A. Lammendola, Esquire pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).  As the PCRA court's promotion of hybrid representation effectively deprived Appellant of his right to assistance of counsel at a critical point in the proceedings below, we vacate the order, remand for further proceedings consistent herewith, and deny counsel's application to withdraw.

Appellant's convictions arose from his involvement in a shootout on a crowded residential street in Philadelphia that caused the death of one

_____
*   Former Justice specially assigned to the Superior Court.

innocent bystander and a serious leg injury to another. At Appellant's consolidated criminal trial, Police Officer Nona Stokes testified that on May 20, 2007, she received a report of shots fired in the area of 16th and York Streets of Philadelphia. *Commonwealth v. Hall*, No. 3161 EDA 2012, unpublished memorandum at 4 (Pa.Super. filed October 24, 2014) (citations to notes of testimony omitted). Responders encountered two shooting victims at the scene, one wounded and one dead. *Id*.

The victims were transported to Temple Hospital, where Officer Stokes later interviewed both the injured victim and another eyewitness, Tracey Lester. According to Officer Stokes, Ms. Lester named longtime acquaintances, Appellant and David "Dave" Satchell, as two shooters in the gunfight. *Id*.

At trial, however, Ms. Lester denied having earlier identified Appellant as a shooter or, for that matter, having ever spoken to Officer Stokes at the hospital. *Id.* at 5. Specifically, she testified she was at a nearby block party when she saw Appellant, Satchell, and other boys walking toward the eventual crime scene just one block away. Lester heard people warning others to bring the children inside because the boys had guns. *Id.* at 4.

Seconds later, Lester testified, gunshots rang out. She described entering her house just before Satchell and two other boys ran onto her porch. She could see a gun in Satchell's hands as she blocked their entry. Lester then volunteered, without being asked, that Appellant was not among the three boys who ran onto her porch. *Id*.

- 2 -

In response to Lester's denial, the Commonwealth presented prior statements made by Lester—one to Homicide Detectives, two during Satchell's preliminary hearing and trial, and one during Appellant's preliminary hearing— in which she said she saw Appellant running with a silver gun immediately after the shootings. *Id.* at 5. Her prior inconsistent statements were admitted as substantive evidence.

Another witness who disavowed his earlier statements implicating Appellant was Derrick Williams. Williams testified at Appellant's trial that he was present at the shooting scene when he witnessed three males come around the corner and begin shooting at Satchell and two other persons from his neighborhood. Williams said that Appellant, whom he knew for most of his life, was not at the scene. *Id.* at 5.

Williams' testimony contradicted the prior statement he had given to investigators describing how he witnessed Appellant, Satchell, and one "Hakim" arrive at the neighborhood in question and immediately return fire when fired upon by three other males. When the shooting stopped, Williams had told investigators, Appellant, Satchell, and Hakim ran toward Lester's house and attempted in vain to gain entry. They resumed flight and jumped over a fence, Williams said. As part of his statement, Williams described Appellant's gun as grey. *Id.* at 5-6.

Williams' testimony also contradicted his previous testimony at Satchell's criminal trial, where he implicated Appellant in a manner consistent with his earlier statement to investigators. At Appellant's trial, therefore, the

Commonwealth introduced Williams' initial statement to investigators and his testimony from Satchell's trial as prior inconsistent statements providing substantive evidence of Appellant's role in the shootings. *Id.* at 6.

On August 26, 2010, the jury found Appellant guilty in case 0010570-2009 of First Degree Murder, as a felony of the first degree; Criminal Conspiracy, as a felony of the first degree; Possession of an Instrument of Crime (PIC), as a misdemeanor of the first degree; and, Violation of the Uniform Firearms Act section 6108 (VUFA 6108), as a misdemeanor of the first degree. The jury found him guilty in case number 0010569-2009 of Aggravated Assault, as a felony of the first degree.

On December 14, 2010, Appellant received a mandatory sentence of life imprisonment without the possibility of parole for the First Degree Murder conviction, with all other sentences in the two cases running concurrently. Appellant filed no post-sentence motion or direct appeal.

On March 2, 2011, Appellant filed his first PCRA petition claiming ineffective assistance of counsel for counsel's failure to file a post-sentence motion and a direct appeal. On October 22, 2012, by agreement, the PCRA court granted relief by reinstating Appellant's direct appeal rights but denied his request to file post-sentence motions *nunc pro tunc*.

On November 19, 2012, Appellant filed a direct appeal, *nunc pro tunc*, in which he argued: 1) the Commonwealth failed to offer sufficient evidence to prove he was either a principal, accomplice, or criminal conspirator in the

commission of any of the crimes charged; 2) the Commonwealth failed to disprove Appellant's claim of self-defense; and 3) the verdict ran counter to the weight of the evidence.

In affirming judgment of sentence, this Court rejected Appellant's first two challenges where evidence admitted in his criminal trial identified him as an active and willing combatant in the May 20, 2007, gunfight. *Id.* at 4-10. Specifically, we held that Lester's and Williams' prior inconsistent statements incriminating Appellant were sufficiently reliable to constitute substantive evidence supporting the jury's verdict. Moreover, we held that the doctrine of transferred intent applied to prove Appellant acted with specific intent in causing both the death and injury in question, where evidence established Appellant participated in a daytime shootout involving at least four guns firing twenty rounds amid scattering neighbors.

On April 29, 2015, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal.

On September 8, 2015, Appellant *pro se* timely filed the present PCRA petition, considered his first for purposes of PCRA review. ***See Turner***, 73 A.3d at 1286 (noting when PCRA petitioner gains reinstatement of direct appeal rights *nunc pro tunc*, his subsequent PCRA petition is deemed his first for timeliness purposes). In Appellant's *pro se* petition, he raised three issues.

First, Appellant asserted that trial counsel was ineffective for failing to object to the prosecutor's opening argument and subsequent questions posed to witnesses implying or alleging that Appellant and his cohorts took part in

the shootout in question. According to Appellant, such allegations were inappropriate where the prosecutor knew in advance that prospective witnesses Lester and Williams were prepared to deny Appellant's involvement.

In Appellant's second *pro se* claim, he asserted that trial counsel was ineffective by failing to raise a confrontation rights-based objection to the medical examiner's testimony where a different medical examiner had performed the autopsy of the victim killed at the scene. Trial counsel also erred, Appellant continued, by stipulating to the medical examiner's qualifications.

Appellant's third *pro se* claim charged trial counsel with ineffectively failing to object to the trial court's jury instruction on first-degree murder, which, Appellant posited, inaccurately defined the crime both generally and with specific reference to theories of vicarious liability and transferred intent.

The PCRA court appointed counsel, George S. Yacoubian, Jr., Esq., who filed an amended PCRA petition on March 5, 2017. Counsel's amended petition included none of Appellant's *pro se* issues. Instead, it alleged that trial counsel ineffectively failed to limit the defense to a single theory—*either* nonparticipation *or* self-defense, failed to make a closing argument and request an instruction on justifiable self-defense, and failed to raise a weight of the evidence claim either orally or in a post-sentence motion given Lester's and Williams' recantations.

During the ensuing two months, Appellant instructed counsel to add the *pro se* issues to the amended petition, but counsel replied that he was not

required to do so where his independent review satisfied him that the issues had no merit. Appellant, therefore, asked counsel to withdraw from representation given their differences on how to pursue PCRA relief. At this time, appointed counsel advised the PCRA court of Appellant's request that he withdraw.

In response, the PCRA court informed Appellant through a letter dated May 18, 2017, that it would not grant Appellant new counsel, as it was the court's opinion that the amended petition reflected counsel's thorough review of the record and contained well-developed issues. In this respect, the court advised Appellant of counsel's duty to exclude from the amended petition claims that are without merit.

Nevertheless, the court asked counsel to reexamine the prospect of raising the *pro se* claims in the amended petition, but it reiterated its confidence in counsel's competence and advised that counsel would be under no duty to advance the issues if his merits assessment remained the same after such reexamination. On May 20, 2017, appointed counsel filed a supplemental amended petition indicating that his second review did not alter his initial position that the *pro se* issues were baseless and undeserving of inclusion in the amended petition.

On June 20, 2017, Appellant filed a formal motion for new counsel in which he reasserted that appointed counsel purposely ignored his demands that the amended petition incorporate the three issues raised in the *pro se* petition. Since the court's May letter, Appellant maintained, several more

exchanges between the two had failed to convince counsel to add to his amended petition. The motion stated that Appellant therefore asked appointed counsel to withdraw from representation so that he may be granted new counsel, given their irreconcilable differences regarding the amended petition. Shortly thereafter, on July 18, 2017, the Commonwealth filed a motion to dismiss Appellant's counseled amended petition for its failure to raise meritorious issues.

On November 20, 2017, the PCRA court conducted a hearing, with Appellant, appointed counsel, and the Commonwealth present, to discuss at length not only the issues raised in the amended petition but also why, in its opinion, the issues raised in the *pro se* petition were baseless and, thus, appropriately omitted from the amended petition. *See* N.T. 11/20/17, at 1-24. After reiterating that counsel had competently reviewed the record and exercised his discretion to exclude the *pro se* issues, the PCRA court opted to address the *pro se* issues and explain why each was patently meritless. N.T. at 7-14. To this portion of the hearing, the Commonwealth lodged an objection that the court had improperly entertained hybrid representation. Turning to the amended petition, the court offered its reasons for finding no merit to the issues counsel raised therein. N.T. at 14-21.

At the close of the hearing, the court indicated it was issuing notice of its intent to dismiss Appellant's petition without an evidentiary hearing, pursuant to Pa.R.Crim.P. 907. It then asked generally if appointed counsel would continue to represent Appellant on appeal, to which Appellant answered

- 8 -

"no." The court responded that Appellant was entitled to counsel, but it concomitantly appeared to place the burden exclusively upon Appellant to file a *pro se* response to the court's Rule 907 notice in which he was to raise, among any other issues, a motion for appointment of new counsel.

On the same day, the PCRA court served Appellant with written notice of its intent to dismiss pursuant to Rule 907. According to the court, it subsequently continued the matter twice, extending the time for Appellant's Rule 907 response to February 20, 2018, but no response was filed. Therefore, on March 22, 2018, the PCRA court entered an order dismissing Appellant's amended PCRA petition and removing appointed counsel Yacoubian pursuant to Appellant's oral motion at the PCRA hearing. In the same order, the court appointed present counsel, James Lammendola, Esq. as PCRA appellate counsel.

Attorney Lammendola filed a timely notice of appeal and complied with the PCRA court's directive to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. In the statement, however, counsel indicated he was filing what he termed an "**Anders** Brief"[1] given his conclusion that the appeal was wholly frivolous.

---

[1] At the time present counsel prepared his response to the PCRA court's Pa.R.A.P. 1925(b) order, he was apparently writing under the mistaken belief that an **Anders** brief is required where counsel seeks to withdraw on appeal from the denial of PCRA relief. A **Turner**/**Finley** no-merit letter, however, is the appropriate filing when counsel deems an appeal meritless, as present counsel clearly realized by the time he filed his no-merit letter with this Court.

Counsel nevertheless expressed his intention to include in the brief Appellant's position with respect not only to the three issues previously raised in the amended petition but also to a new, additional issue citing the ineffective assistance of trial and PCRA counsel for failing to argue that 18 Pa.C.S.A. § 1102 is void for vagueness. Specifically, Appellant contends the statute fails to advise that the mandatory sentence for life imprisonment for first-degree murder precludes the possibility of parole. The PCRA court filed a responsive Pa.R.A.P. 1925(a) opinion deeming the first three issues meritless and the new issue waived for failure to raise it first in a response to the court's Rule 907 Notice.

Counsel has filed his **Turner**/**Finley** "no merit letter" presenting Appellant's position on the four issues described above and asking this Court for permission to withdraw from representation. Appellant, for his part, has not filed a *pro se* brief in response to counsel's no merit letter.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101, 109 (Pa.Super. 2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa.Super. 2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa.Super. 2012). Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to

hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa.Super. 2012); Pa.R.Crim.P. 907.

Initially, we *sua sponte* consider whether the PCRA court deprived Appellant of his right to counsel at different stages of the litigation. First examined is the PCRA court's denial of Appellant's *pro se* motion for new counsel based on appointed counsel's refusal to include Appellant's *pro se* issues in the amended petition. A PCRA petitioner has a right to counsel on his first petition. *Commonwealth v. Lindsey*, 687 A.2d 1144, 1145 (Pa. Super. 1996). However, court-appointed counsel is not obligated to pursue meritless claims. *Commonwealth v. Burkett*, 5 A.3d 1260, 1277 (Pa. Super. 2010). In this regard:

> Pennsylvania Rule of Criminal Procedure 122(C) provides that "[a] motion for change of counsel by a defendant to whom counsel has been assigned shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(C)(2). "To satisfy this standard, a defendant must demonstrate that he has an irreconcilable difference with counsel that precludes counsel from representing him." *Commonwealth v. Spotz*, 562 Pa. 498, 756 A.2d 1139, 1150 (2000). Whether a motion for change of counsel should be granted is within the sound discretion of the trial court and will not be disturbed on appeal absent abuse of discretion. *Id.; Commonwealth v. Basemore*, 525 Pa. 512, 582 A.2d 861, 865 (1990). "While an indigent is entitled to free counsel, he is not entitled to free counsel of his own choosing." *Commonwealth v. Chumley*, 482 Pa. 626, 394 A.2d 497, 507 n. 3 (1978); *accord Commonwealth v. (James Lee) Smith*, 480 Pa. 524, 391 A.2d 1009, 1012 n. 3 (1978); *Commonwealth v. Segers*, 460 Pa. 149, 331 A.2d 462, 465 (1975).

*Commonwealth v. Cook*, 952 A.2d 594, 617 (Pa. 2008). Appointment of new counsel, moreover, is not warranted where a defendant merely alleges a difference of opinion in litigation strategy. *Commonwealth v. Floyd*, 937 A.2d 494 (Pa.Super. 2007).

As noted, appointed counsel's amended petition included none of the issues Appellant had raised in his *pro se* petition. Appellant entreated counsel to add the *pro se* issues to the amended petition, but counsel refused, dismissing them as meritless.

Apprised by counsel of the disagreement, the PCRA court reviewed the matter and notified Appellant that, consistent with decisional law, it would not require counsel to raise and develop baseless *pro se* issues. Afterward, Appellant filed a motion for new counsel and the Commonwealth filed a motion to dismiss pursuant to Rule 907. Thereafter, as more fully described below, the PCRA court conducted a hearing in which it explained why, in its opinion, the *pro se* petition's issues lacked merit and did not warrant inclusion in the amended petition.

The record supports the PCRA court's conclusion that appointed counsel competently and diligently represented Appellant with his filing of the amended petition. While Appellant never indicated disapproval with the issues contained in the amended petition, he insisted nevertheless that his appeal was best served by the inclusion of his *pro se* issues. As such, Appellant's motion for new counsel was rooted in nothing more than his disagreement with appointed counsel on appellate strategy.

A strategic difference between counsel and petitioner does not qualify as an "irreconcilable difference" warranting appointment of new counsel. **Floyd**, **supra**. Given the facts and controlling authority as appropriately discussed by the PCRA court in the record, we agree with the PCRA court that the exclusion of Appellant's *pro se* issues from the counseled amended petition did not entitle Appellant to appointment of new counsel.

Next, we turn to several instances during the November 20, 2017, hearing involving either hybrid representation or the intersection between hybrid representation and the denial of Appellant's right to counsel. Early in the proceedings, the court conducted merits review of both Appellant's *pro se* petition and counsel's amended petition. Finding that neither petition afforded Appellant PCRA relief, the court announced its intention to issue notice of its intent to dismiss pursuant to Pa.R.Crim.P. 907. N.T. at 25.

It is apparent that the PCRA court thus promoted hybrid representation of Appellant with its merits review of both petitions. Compounding the problem, moreover, was the court's advisement to Appellant that his *pro se* issues were preserved for appellate review in the same manner that the issues raised and argued in the counseled, amended petition were. During this exchange, the court engaged Appellant directly and exclusively with respect to his Rule 907 and appellate obligations even though Appellant had never made a motion to self-represent and despite the presence of appointed counsel, who curiously remained silent and offered nothing of substance throughout the hearing:

.

**THE COURT:** Therefore, this court finding there being no issues of merit, the PCRA is hereby denied.

So you are present. I will send you a 907 notice, Mr. Hall. You can respond to that. If you do, then I will consider whatever you respond to and then if I deny that and formally dismiss it, you would have thirty days to file an appeal to the Superior Court. Do you understand that?

**APPELLANT:** Yes.

**THE COURT:** Do you have any questions?

**APPELLANT:** Yes, I do. [At which point Appellant asks a trial-related, evidentiary question that, the court explains, implicated the jury's province to assess credibility and weigh the evidence].

. . .

What issues do I have left to work with?

**THE COURT:** I can't tell you what issues you have left to work with, then I would be your lawyer. Look at it and decide what you want to do. You have all these issues that you raised, by the way. They are still there. Just because I denied them, they would go to the Superior Court. Do you understand that?

**APPELLANT:** Yeah.

**THE COURT:** The ones that I just went through. If you disagree with me, name them all in your 1925(b), make sure you don't forget any of them and then they go up to the Superior Court.

**APPELLANT:** You are going to send it to me?

**THE COURT:** I am going to send you a 907 notice, then I am going to formally dismiss your PCRA petition in thirty days. You can respond to that and if you do, then I have to look at it and see if I am going to do anything. I could do nothing and just deny

it but once that is denied, then you have thirty days to file an appeal to the Superior Court.

You will raise all the issues that I just went through and the Superior Court will look at the issues. . . .

**THE COURT:** So you will order the transcript [of the present hearing]. I will send you a notice. You can actually ask for more time, so you can review the transcript before you answer the 907 but you have to ask. If you ask and I grant you more time, then you will have time to look at the notes before you respond. All right?

**APPELLANT:** Yes.

**THE COURT:** I will send you a 907 notice. You send me back something saying give me time to look at the notes before I respond. Fair enough?

**APPELLANT:** All right.

N.T. at 21-26.

The exchange between the court and Appellant prompted the

Commonwealth to lodge a hybrid representation-based objection:

**THE COMMONWEALTH:** I don't know if I have to preserve any kind of an exception to the consideration of [Appellant's] *pro se* issues. I just want to make sure that the Commonwealth's position is clear, which is that because the [Appellant] is represented, he can't have hybrid representation and only the claims raised by Counsel in the amended petition can be considered by the court and I took it to be that Your Honor was merely explaining to the [Appellant] with respect to the three claims raised by him in his *pro se* petition, why you agreed with counsel's assessment that they were meritless.

**THE COURT:** I let him raise them. They are in his *pro se* petition. I didn't have to let you raise those but I let you.

**APPELLANT:** I was coming under the assumption that they wasn't [sic] going to be raised.

> **THE COURT:**    No. I let you raise them. I looked at them and I let your counsel look at them, too. He said they weren't viable. There weren't good claims, and you raised them. I looked at them. I didn't find them to be viable, either, but they are preserved for appeal. I let him do it.
>
> **THE COMMONWEALTH:**    Okay. Your Honor, if you don't mind, I will just make an objection. . . .
>
> **THE COURT:**    Right. No, you can make an objection but once it's there, I can't imagine the Superior Court would overrule, but they could. They could say I had no right to consider it. Of course, I am the Judge.
>
> I could have issued you a 907 notice and you could have raised that and then I could have said 'all right, I am going to let you do it,' so.

N.T. at 26-28.

Finally, the PCRA court left it unclear, at best, what appointed counsel's role was with respect to Appellant once Appellant indicated he wished for new counsel to represent him. The PCRA court acknowledged Appellant remained entitled to the assistance of appointed counsel, but it failed to ensure counsel—whether then-appointed counsel or a newly appointed counsel—was placed in a position to serve Appellant's best interests for purposes of filing a response, if any, to the PCRA court's Rule 907 notice:

> **THE COURT:**    Now the only other issue is if Mr. Yacoubian [appointed counsel] will stay on and represent you?
>
> **APPELLANT:**    No.
>
> **THE COURT:**    You don't want him to?
>
> **APPELLANT:**    No.
>
> **THE COURT:**    It's his first PCRA.

**THE COMMONWEALTH:** He would be entitled to counsel on appeal.

**THE COURT:** If I send you a 907 notice, you will respond and then in that, you will file and ask for counsel to be withdrawn, because now we went through all of this, and then I would appoint new Counsel because it is your first. This is how we will handle this. Do you understand?

**APPELLANT:** Yes.

N.T. at 28-29. As noted above, neither Appellant nor appointed counsel filed a response to the court's Rule 907 notice. Moreover the court failed to appoint new counsel until after it dismissed Appellant's PCRA petition pursuant to Rule 907.

"*No* defendant has a right to hybrid representation, either at trial or on appeal." ***Commonwealth v. Padilla***, 80 A.3d 1238, 1259 (Pa. 2013) (emphasis in original) (citing ***Commonwealth v. Ali***, 10 A.3d 282, 293 (Pa. 2010) (characterizing as a "legal nullity" a *pro se* Pa.R.A.P. 1925(b) statement filed by an appellant who was represented by counsel). Here, the record shows the PCRA court violated the rule against hybrid representation when it reviewed Appellant's *pro se* issues on the merits, declared them preserved for appeal, and advised Appellant to file a *pro se* response to the court's Rule 907 notice without either clarifying the role of appointed counsel—who remained counsel of record—with regard to filing a counseled response to the Rule 907 notice or advising Appellant of the pitfalls associated with self-representation at a critical stage of his appeal.

At the outset of the hearing, the court declared it had conducted merits review of both Appellant's *pro se* issues and counsel's issues raised in the amended petition and found all issues meritless but preserved for appeal. The Commonwealth objected to this hybrid treatment to the extent that it transcended a mere explanation of the court's opinion that counsel had acted appropriately in declining to include the *pro se* issues in the amended petition. Appellant, too, expressed his surprise at the court's review, as he indicated he was resigned to the court's earlier ruling that appointed counsel had appropriately exercised professional discretion in excluding Appellant's *pro se* issues from the amended petition.

We conclude the court clearly erred in reviewing Appellant's *pro se* issues on their own merits and declaring them preserved for appeal. Appellant had neither asked for nor received permission to proceed *pro se*, and he was still represented by counsel, who had filed a well-developed and competently prepared amended petition before the court. Accordingly, our jurisprudence required the PCRA court to consider the *pro se* petition a legal nullity and to confine its review, instead, to counsel's amended petition.

The inappropriate merits review of Appellant's *pro se* issues, however, appears to have been inconsequential. The court determined the issues to be meritless, and there is no indication that Appellant sought to avail himself of the court's invitation to contest the rejection of his *pro se* issues on appeal to this Court. As such, we view the court's error in this regard as harmless.

The second instance where the court below blurred the line between self-representation and counseled representation, however, requires remand for further proceedings. Specifically, the PCRA court's directives on filing a response to its Rule 907 notice left it unclear whether Appellant remained counseled or was required to act on his own accord for such a purpose. The lack of clarity on this point was critical, because Appellant's subsequent failure to file a Rule 907 notice prejudiced his ability to allege in the present appeal any claim, including claims of ineffective assistance of PCRA counsel, not already raised before the PCRA court. *See Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*) (issues related to the ineffective assistance of PCRA counsel must be raised in response to a *Turner*/*Finley* letter or in response to a Pa.R.Crim.P. 907 notice); Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

At the conclusion of the November 20, 2017, hearing, Appellant indicated, when asked, that he did not want Attorney Yacoubian to continue as appointed counsel. This was not the first time that Appellant moved for the removal of appointed counsel, yet it is also true that he had never before sought to self-represent during litigation of his first petition, and he did not ask to self-represent at the hearing.

Moreover, the PCRA court acknowledged at the hearing that Appellant remained entitled to counsel. Nevertheless, the PCRA court seemingly placed the onus on Appellant to file a *pro se* Rule 907 response in which he was to

- 19 -

include a motion for new counsel—even though he had just essentially made the oral motion before the court.

The excerpt above thus shows the court essentially left it to Appellant to raise any other issues he deemed fit for a Rule 907 response, even though the court concomitantly recognized Appellant's continued right to counsel. Indeed, appointed counsel had neither sought nor been granted leave to withdraw, but his virtual silence throughout the hearing was conspicuous, and the court's willingness to appoint new counsel made appointed counsel's role all the more unclear. Under the totality of these circumstances, the court's directives in question effectively left Appellant uncounseled at a critical juncture in the Rule 907 proceedings without so much as the benefit of warnings that self-representing petitioners are due. *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998) (setting forth procedures designed to promote a defendant's knowing, intelligent, and voluntary waiver of his right to counsel).

We conclude, therefore, that the court is well-intentioned but confusing directives caused appointed counsel to abandon Appellant at a stage in the proceedings where the court acknowledged Appellant's continued entitlement to counsel. Accordingly, to restore Appellant's right to receive the benefit of counsel in fashioning a response, if any, to the PCRA court's Rule 907 Notice of Intent to Dismiss, we vacate the order entered below and remand to the PCRA court, which shall set a reasonable timetable for Appellant's 907 response. As Appellant is currently represented by counsel who has filed a

no-merit letter in the present appeal, the PCRA court will first determine if current counsel shall continue to represent Appellant or if, instead, new counsel should be appointed.

Application to withdraw as counsel denied. Order vacated. Case remanded for proceedings consistent herewith. Jurisdiction relinquished. Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/19