J-A10009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RASHON WATSON | : | No. 1930 EDA 2019 |
| | : | |
| Appellee | : | |

Appeal from the Order Entered June 6, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008771-2018

BEFORE:   BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 07, 2020**

The Commonwealth appeals from the June 6, 2019 order granting Appellee Rashon Watson's motion to quash all charges upon finding insufficient evidence to create a *prima facie* case of criminal homicide and related charges.  We reverse and remand.

On July 1, 2018, Angel Alvarez ("the victim") was discovered on 3352 E Street in the city of Philadelphia.  **See** N.T. Preliminary Hearing, 12/12/18, at 3.  He was deceased and had been shot five times.  **Id**.  The medical examiner determined that the cause of death was homicide.  **Id**.  City of Philadelphia Detective Thorsten Lucke acquired, analyzed, and organized surveillance footage from three cameras in the area of the crime scene.  **Id**. at 4-5.

---

[*] Retired Senior Judge assigned to the Superior Court.

Although located nearby, none of the cameras contained audio or covered the actual shooting. *See* R.R. 016a. The first camera was located on Hartville Street, which ran directly parallel to E street. The two streets were connected by East Ontario Street. *Id*. The second camera was located on East Ontario Street at the intersection of East Ontario and E Streets. *Id*. The final camera was positioned on E Street, but was too far away to capture the shooting. *Id*.; *see also* N.T. Preliminary Hearing, 12/12/18, at 5-8.

The video compilation began on Hartville Street. After a van parked near the intersection of Hartville and East Ontario Street, three men exited the vehicle and walked towards the intersection, where they would have had a view of "E" street. The three men disappeared from view for approximately five minutes, before returning to the van, where they stood in the street and had a conversation towards an open van door for approximately five minutes. Eventually, a fourth individual exited the vehicle. The fourth man was wearing a black ball cap, a white short-sleeved t-shirt, black pants with a white stripe down the side, and white shoes. Following the fourth man, all four people walked in the direction of E Street, and disappeared from view.

As they approached the area where the shooting occurred, only the fourth man appeared on the E Street camera. In the upper right corner of the frame, the video depicted what appeared to be the fourth man, as he raised his left arm and bent his knees in the direction of the crime scene. He then dropped his arm, turned around, and ran back towards the van. Simultaneously, the first three men who had been standing at the intersection

between E street and East Ontario Street, facing the direction of the crime scene, also turned around and ran back towards the van. The fourth man was seen running with one hand holding an object near his waistband and as he entered the van, he appeared to place a dark object that resembled a gun into his waistband. All four individuals left the area in the van. Emergency responders arrived shortly thereafter,[1] locating the victim still in his vehicle and deceased from five gunshot wounds.

The police were able to freeze images of all four men from the surveillance footage, which they then used to generate a parole alert flier. A month after the victim was killed, City of Philadelphia Detective Edward Tolliver interviewed Appellee.[2] During the interview, Detective Tolliver showed Appellee the parole alert flier that he had generated, with the images of the four individuals as seen on the surveillance footage. Appellee immediately identified himself as the driver of the vehicle and claimed ownership of the van. Appellee was arrested and charged with murder, conspiracy to commit murder, carrying a firearm without a license, carrying a

_____

[1] The amount of time that passed from when the victims left the scene to when the police arrived was not discussed by either side at the preliminary hearing or during the motion to quash hearing. However, the police arrived at the end of the surveillance footage. Taking into account time stamp discrepancies between the two videos, which was also not explained at either hearing, it appears that the police arrived within fifteen minutes of the four men leaving the area.

[2] It is unclear from the preliminary hearing transcript how Detective Tolliver came to interview Appellee.

firearm on the public streets of Philadelphia, and possession of an instrument of a crime.

On December 13, 2018, Appellee proceeded to a preliminary hearing, at which Detectives Lucke and Tolliver testified and the Commonwealth played the surveillance video. Both sides stipulated to the contents of the medical examiner's report. At the conclusion of the hearing, all of the charges were held for court.

On February 26, 2019, Appellee filed a motion to quash all charges, arguing that the Commonwealth had failed to establish a *prima facie* case. The Commonwealth filed a brief in opposition to the motion to quash, and on May 22, 2019, the trial court held oral argument. At the conclusion of the hearing, the court took the matter under advisement. On June 4, 2019, the trial court entered an order granting the motion to quash and dismissing all of the charges. This appeal followed. Both the Commonwealth and the trial court have complied with the mandates of Pa.R.A.P. 1925 and this appeal is properly before us. **See Commonwealth v. Weigle**, 997 A.2d 306, 308 n.5 (Pa. 2010) (holding that an order discharging an accused constitutes a final order subject to appellate review).

On appeal, the question presented is: "properly viewed in the light most favorable to the Commonwealth, did the evidence and all reasonable inferences therefrom establish a *prima facie* case of murder and conspiracy, where the defendant drove three co-conspirators to the scene of the crime, surveyed the scene, watched as one co-conspirator shot the victim, and then

together with his co-conspirators, ran back to his car and fled?" Commonwealth's brief at 4.[3]

We consider the Commonwealth's question mindful of the following principles. "It is well-settled that the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." ***Commonwealth v. Hilliard***, 172 A.3d 5, 12 (Pa.Super. 2017) (citation and internal quotation marks omitted). "[T]he trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." ***Commonwealth v. Karetny***, 880 A.2d 505, 513 (Pa. 2005). Therefore, we are not bound by the legal determinations of the trial court and our standard of review is *de novo.* ***Id***.

We review a decision to grant a pre-trial motion to quash by examining the evidence and reasonable inferences derived therefrom in the light most favorable to the Commonwealth. ***Commonwealth v. Starry***, 196 A.3d 649, 656 (Pa.Super. 2018). Our Supreme Court has described the Commonwealth's burden as follows.

> At the preliminary hearing stage of a criminal prosecution, the Commonwealth need not prove the defendant's guilt beyond a reasonable doubt, but rather, must merely put forth sufficient

---

[3] Although the trial court quashed all of the charges, the Commonwealth does not contest the quashal of the firearms not to be carried without a license, carrying firearms in public, or the possession of an instrument of crime charges. ***See*** Commonwealth's brief at 9 n.3.

evidence to establish a *prima facie* case of guilt. A *prima facie* case exists when the Commonwealth produces evidence of each of the material **elements of the crime charged** and establishes probable cause to warrant the belief that the accused committed the offense. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury.

***Karetny***, ***supra*** at 513-14 (citations omitted, emphasis added).

Pursuant to 18 Pa.C.S. § 903(a) "a person is guilty of [criminal] conspiracy with another person or persons ... if with the intent of promoting or facilitating" the commission of a crime, he (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." Criminal conspiracy is "almost always proved through circumstantial evidence," where the circumstances and conduct of the parties creates "a web of evidence" linking the accused to the alleged conspiracy. ***Commonwealth v. Lambert***, 795 A.2d 1010, 1017 (Pa.Super. 2002). Factors to consider include, but are not limited to "the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." ***Commonwealth v. Devine***, 26 A.3d 1139, 1147 (Pa.Super. 2011).

Pursuant to 18 Pa.C.S. § 2501(a), "a person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the

death of another human being." A person is an accomplice when, "with the intent of promoting or facilitating the commission of the offense, he . . . . aids or agrees or attempts to aid such other person in planning or committing it." 18 Pa.C.S. § 306.

The Commonwealth does not argue that Appellant was the shooter. Instead, it alleges that reasonable inferences drawn from the evidence indicate that Appellant committed homicide and conspiracy to commit murder when he drove the shooter to the scene of the crime, acted as lookout, and then the getaway driver. *See* Commonwealth's brief at 8. Thus, it contends that the trial court erred in quashing the conspiracy to commit murder and homicide charges. *Id*.

The trial court accepts that the Commonwealth presented a *prima facie* case that the fourth man committed the homicide. Nonetheless, it reasoned that the Commonwealth did not meet its burden to prove a *prima facie* case of criminal conspiracy or homicide through accomplice liability, because "there was scant evidence presented to establish a relationship between the unidentified gunman and Appellee nor was any evidence presented to indicate a plan or knowledge of the crime prior to it unfolding." Trial Court Opinion, 8/27/19, at 5. In support of its holding, the trial court points to the fact that the Commonwealth did not establish a "significant relationship" between Appellee and the shooter and that Appellee was not standing next to the shooter when he committed the murder. *Id*. Therefore, in its view, the

Commonwealth failed to prove that Appellee agreed to aid in the murder of the victim. *Id*. at 6. We disagree.

In finding that the Commonwealth had not met its burden of proof, the trial court contrasts the facts of this case with those in *Lambert*, *supra* and *Commonwealth v. Finley*, 383 A.2d 1259 (Pa. 1978). Trial Court Opinion, 8/27/19, at 4-6. However, as the Commonwealth correctly points out, both of these cases involved analysis of evidentiary sufficiency necessary to sustain a conviction beyond a reasonable doubt, not a *prima facie* case. Thus, the burden of proof on the Commonwealth was much higher in *Lambert* and *Finley*, than it was here. *See Commonwealth v. Dantzler*, 135 A.3d 1109, 1114 (Pa.Super. 2016) ("a *prima facie* case is a low threshold of proof"). Importantly, the trial court did not acknowledge this distinction in its analysis, nor did it mention the Commonwealth's burden of proof anywhere in its writing. *See* Trial Court Opinion, 8/27/19, at 3, 6.

Viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences which would support a guilty verdict, we find that the Commonwealth established a *prima facie* case that Appellee conspired and acted as an accomplice in the murder of the victim. *See Commonwealth v. Huggins*, 836 A.2d 862, 866 (Pa. 2003). First, Appellee identified himself in the footage as the driver of the vehicle that contained the shooter, placing him on scene and in the area of the crime scene at the same time as the shooter. *See, e.g. Commonwealth v. Wayne*, 720 A.2d 456,

461 (Pa. 1998) (holding that "the fact that [the conspirators] all arrived simultaneously leads to the logical inference that their joint appearance was planned."). Then, upon arrival, Appellee and two other individuals exited the vehicle and walked towards to the crime scene before returning and engaging in a short, but animated conversation with each other and the alleged shooter. From this behavior, a fact-finder could reasonably infer that Appellee and his cohorts were scouting the scene for the shooter.

Finally, although, physically separated from the shooter just prior to the shooting, Appellee still had an unobstructed view of what happened from his vantage point, in the middle of the street at the intersection of E Street and East Ontario Street. After the shooting, all four men's movements closely tracked each other's, since all four men simultaneously turned around and ran purposefully back to Appellee's vehicle. Notably, while Appellee arrived first, he waited for everyone, including the shooter to enter the vehicle, before driving away. A reasonable inference from Appellee's deliberate actions post-shooting could indicate that he was aware of the shooter's plan to murder the victim and aided the shooter's flight from the crime scene by operating the getaway vehicle. *See Commonwealth v. Clark*, 746 A.2d 1128, 1137 (Pa.Super. 2000) (*en banc*) (finding that evidence of the parties "acting in concert" supports an inference of conspiracy).

Accordingly, we find that the trial court erred when it quashed the conspiracy and homicide charges and reverse its order dismissing these two charges.

Order reversed and remanded. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 10/7/2020*