J-S14040-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :         PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| MARCUS ANTHENAL BROWN | : |
| | : |
| Appellant | : No. 627 MDA 2025 |

Appeal from the Judgment of Sentence Entered March 13, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003948-2024

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:         **FILED: JUNE 16, 2026**

Marcus Anthenal Brown ("Appellant") appeals from the judgment of sentence imposed following his jury trial. Appellant's counsel, Brandy Grace Hoke, Esq., seeks to withdraw from representation pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). We affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

As the sole issue addressed in the ***Anders*** brief discusses the trial court's denial of a motion for directed verdict, we summarize the evidence presented by the Commonwealth in its case-in-chief.

On April 16, 2024, Pennsylvania State Police Troopers Eric Dressler and Zachary Larkin separately responded to the area of 23 East High Street. N.T., 3/13/25, at 110. Trooper Larkin arrived first and knew from the dispatcher that Appellant "had an active warrant in the system." ***Id.*** at 80. Additionally,

the troopers "were notified that [Appellant] had left the residence prior to arrival" and Trooper Larkin started "to ... canvass the area to help locate [Appellant]."[1]  *Id.*  Upon arrival in the general area, Trooper Larkin began searching and "observed [Appellant] running across the roadway." *Id.* at 84. Appellant "was already in essentially a full sprint" and Trooper Larkin opined that Appellant "could clearly see that [Trooper Larkin] was in a marked patrol car." *Id.* at 86.  Trooper Larkin parked his vehicle and began a foot pursuit, declaring himself a member of the Pennsylvania State Police and issuing commands to stop.  *Id.*  Appellant began "to slow his pace" and Trooper Larkin was "able to catch up" to Appellant, but Appellant "refused to stop" and the trooper "had to physically wrestle him to the ground." *Id.* at 87.

Trooper Dressler arrived on scene after Trooper Larkin apprehended Appellant.  He "rushed over ... and conducted a search incident to arrest[.]" *Id.* at 113.  Trooper Dressler recovered suspected crack cocaine and a device "used to smoke crack cocaine." *Id.* at 120.  Based on these events, the Commonwealth charged Appellant with flight to avoid apprehension, possession of a controlled substance, and possession of drug paraphernalia.

---

[1] The Commonwealth did not specifically elicit the nature of the call that led to the dispatch.  Trooper Larkin testified that they were sent to "an apartment complex located on East High Street."  N.T., 3/13/25, at 82.

Appellant called his wife, Ashlee Brown, who testified that she called 911 because Appellant "was doing drugs" and she "didn't want them in [her] home or around [their] children." *Id.* at 135.  Brown testified that it took approximately 20 minutes for the troopers to arrive and that Appellant immediately stopped when confronted.

Appellant "move[d] for a directed verdict" after the Commonwealth rested on the basis that the witnesses failed to identify him. *Id.* at 129. Appellant argued that "there wasn't any identification of him in open court." *Id.* at 130. The Commonwealth conceded that the witnesses did not explicitly identify Appellant as the man they encountered and arrested, but argued that "the jury can infer that there was an identification." *Id.* The trial court denied the motion. Ultimately, the jury found Appellant not guilty of flight to avoid apprehension, and guilty of the possessory offenses. Appellant opted for immediate sentencing, and the trial court imposed an aggregate period of two years of probation.

On April 11, 2025, the Clerk of Courts docketed a *pro se* notice of appeal. The trial court appointed counsel on May 29, 2025, and ordered Appellant to file a Rule 1925(b) statement. However, counsel failed to file a statement and the trial court issued an opinion deeming all issues waived.

Appellant filed a *pro se* application to remand. We granted the application, retained jurisdiction and directed the trial court to determine if counsel had abandoned Appellant and, if so, to take steps to protect Appellant's appellate rights. The trial court appointed Attorney La Tasha Williams, Esq., and authorized counsel to file a Rule 1925(b) statement. Attorney Williams complied and filed a statement alleging that the trial court erred in failing to grant a directed verdict in Appellant's favor "due to insufficient evidence of the element of identity." Concise Statement, 12/7/25.

The trial court's responsive opinion acknowledged that case law typically addresses identity challenges in "trials in which in-court identifications were explicitly made," and where the challenge involves claims of mistaken identity or some other impediment to an accurate identification. Trial Court Opinion, 1/15/16, at 9. The court noted that "circumstantial evidence ... is sufficient to undergird such convictions" in those cases, and concluded that the same principle applies here. *Id.* To establish circumstantial evidence of identity, the trial court cited the Commonwealth's questions and the witnesses' answers, which "frequently included usage of 'the [d]efendant.'" *Id.* Additionally, "Trooper Dressler specifically named the Appellant," as he used the name "Marcus Brown" during his testimony. *Id.* (quoting N.T., 3/13/25, at 108)). The trial court concluded that the Commonwealth presented sufficient circumstantial evidence for the jury to infer that Appellant was the individual referenced in the testimony.

In this Court, Attorney Hoke[2] has filed an *Anders* brief that examines the directed verdict issue presented in the December 7, 2025, concise statement.

"Before we address the merits of this appeal, we must determine whether counsel has complied with the procedures provided in *Anders* and its progeny." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1195 (Pa. Super.

_____

[2] The trial court granted Attorney Williams' petition to withdraw filed after her election to the Court of Common Pleas. The trial court thereafter appointed Attorney Hoke to represent Appellant on appeal.

2018) (*en banc*). "In order to withdraw from appellate representation pursuant to **Anders**, certain procedural and substantive requirements must be met." **Commonwealth v. Tejada**, 176 A.3d 355, 358–59 (Pa. Super. 2017). As a procedural matter, counsel must

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

**Id.** at 359.

Counsel's petition to withdraw set forth her "determin[ation], upon a conscientious examination of the entire record, that an appeal ... would be meritless." Petition to Withdraw, 1/30/26, at ¶ 5. Attorney Hoke sent a letter to Appellant, which was attached to her application to withdraw, informing Appellant of his rights to raise additional arguments or points in a *pro se* capacity or hire an attorney to file an advocate's brief. **See Commonwealth v. Blango**, 327 A.3d 670, 675 (Pa. Super. 2024) ("[T]his Court has held that counsel must 'attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights.'") (quoting **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005)). We conclude that Attorney Hoke has substantially complied with the procedural requirements.[3]

_____

[3] We conclude that Attorney Hoke has "substantially complied" with the requirements set forth in **Tejada**, because in her petition to withdraw, she
*(Footnote Continued Next Page)*

Turning to the substantive requirements, to comply with the **Santiago**

Court's requirements the brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

_____

states that an appeal would be "meritless" rather than "frivolous." Petition to Withdraw, 1/30/26, at ¶5. In a prior case involving Attorney Hoke, we cautioned her regarding this nomenclature as follows:

> While the word "frivolous" appears nowhere in the documents Attorney Hoke submitted, we deem her pronouncement that the appeal as a whole is unwarranted as sufficiently analogous. **See** Petition to Withdraw, 12/20/24, at ¶ 7 (stating the determination that an appeal from the order in question "would be meritless"); Letter to Appellant, 12/20/24, at unnumbered 1 ("I do not believe there are any meritorious issues that warrant the filing of an appeal in your case."). **See also Smith v. Com., Pennsylvania Bd. of Prob. & Parole,** 574 A.2d 558, 562 (Pa. 1990) ("[T]he terms 'wholly frivolous' and 'without merit' are often used interchangeably in the **Anders** brief context.).

**Commonwealth v. McWilliams**, 1399 MDA 2024, 2025 WL 3043626, at *2 (Pa. Super. filed July 18, 2025) (unpublished memorandum); **see also** Pa.R.A.P. 126(b)(2) (stating that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value). We reach the same conclusion as the **McWilliams** Court, and as stated, conclude that Attorney Hoke substantially complied with the aforementioned requirements. However, we admonish Attorney Hoke once again for her failure to apply the correct terminology and caution her to adhere to the requirements for withdrawal under **Anders/Santiago**. **See Tejada, supra**.

- 6 -

*Commonwealth v. Blauser*, 166 A.3d 428, 431 (Pa. Super. 2017) (citation omitted).

We conclude that the brief substantially complies with these four requirements, and now "make an independent determination of the merits of the appeal." *Santiago*, 978 A.2d at 358. We "review 'the case' as presented in the entire record with consideration first of issues raised by counsel." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). For the following reasons, we agree that any challenge to the trial court's failure to grant a directed verdict would be frivolous.

"A motion for a directed verdict should be granted if the prosecution's evidence, and all inferences arising therefrom, considered in the light most favorable to the prosecution are insufficient to prove beyond a reasonable doubt that the accused is guilty of the crimes charged." *Commonwealth v. Finley,* 383 A.2d 1259, 1260 (Pa. 1978). We apply the legal test applicable to sufficiency-of-the-evidence challenges raised on appeal following a jury's verdict, which is well-established:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden

may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

**Commonwealth v. N.M.C.,** 172 A.3d 1146, 1149 (Pa. Super. 2017).[4]

"Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction." **Commonwealth v. Hickman**, 309 A.2d 564, 566 (Pa. 1973). Thus, while "identity" is not an "element" in the sense of statutory elements as defined by the Crimes Code,[5] for purposes of addressing whether the Commonwealth has satisfied guilt beyond a reasonable doubt our precedents treat identity as an

_____

[4] However, the specific procedural posture herein dictates the scope of evidence we may consider. When examining whether a jury's verdict is supported by sufficient evidence, we examine all evidence, including evidence from the defense and evidence that was improperly admitted. **See Commonwealth v. Baker**, 24 A.3d 1006, 1034 (Pa. Super. 2011) ("Where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence.") (citation omitted).

Because the motion here was made at the close of the Commonwealth's case, we do not consider the defense evidence, which included Appellant's wife's testimony as well as Appellant's testimony. **See Commonwealth v. McGinnis**, 515 A.2d 847, 851 (Pa. 1986) (concluding that trial court erred by not granting motion for acquittal of driving under the influence charge due to improper admission of breathalyzer test); **id.** (Hutchinson, J., dissenting) (arguing that "the evidence should be judged on all of the evidence presented at trial, even evidence improperly admitted"). This principle would apply here as a motion for directed verdict "is the same as a motion for judgment of acquittal." **Commonwealth v. Sunealitis**, 153 A.3d 414, 420 (Pa. Super. 2016).

[5] 18 Pa.C.S. § 103 (defining "element of an offense," which does not include identity).

element. *See Commonwealth v. Minnis*, 458 A.2d 231, 232 (Pa. Super. 1983) ("The test of sufficiency of the evidence is whether … there is sufficient evidence to find every element of the crime **and the identity of the accused** beyond a reasonable doubt.") (emphasis added). Accordingly, we apply the same principles to questions of identity, including the Commonwealth's entitlement to rely on circumstantial evidence to establish this "element."

The trial court's conclusion that the jury could circumstantially infer Appellant was the man discussed by the troopers in their testimony is irrefutable. While the Commonwealth failed to have the eyewitnesses directly identify Appellant in court, as the trial court noted the transcript is replete with references to "the defendant" generally and on one occasion the name "Marcus Brown" specifically. A few examples demonstrate the point. Trooper Larkin stated that "the [d]efendant had an active warrant in the system." N.T., 3/13/25, at 80. The Commonwealth asked the trooper, "Can you please point out to the jury approximately where you first encountered the [d]efendant?" *Id.* at 84. Trooper Larkin then described "where [he] observed [him] running across the roadway." *Id.* Later, he stated that he took "him into custody[.]" *Id.* at 88. Trooper Dressler, who performed the search incident to arrest, testified that upon arrival he "went up and interacted with Trooper Larkin and the [d]efendant, Marcus Brown[.]" *Id.* at 108. This evidence was sufficient in terms of circumstantial proof to enable an inference that Appellant was the man discussed by the troopers in their testimony. We therefore agree that any challenge to the trial court's ruling would be frivolous.

Moreover, we further conclude that, based on our independent analysis of this issue, Appellant was judicially estopped from arguing that the Commonwealth failed to establish his identity. Our Supreme Court has summarized that doctrine as follows:

> [T]he purpose of judicial estoppel is "to uphold the integrity of the courts by 'preventing parties from abusing the judicial process by changing positions as the moment requires.'" **Trowbridge** [**v. Scranton Artificial Limb Company**, 747 A.2d 862, 865 (Pa. 2000)] (quoting **Gross v. City of Pittsburgh**, 686 A.2d 864, 867 (Pa. Cmwlth. 1996)). In **Tops Apparel Mfg. Co. v. Rothman**, ... 244 A.2d 436 ([Pa.] 1968), our Court stated that "[a]dmissions ... contained in pleadings, stipulations, and the like are usually termed 'judicial admissions' and as such cannot be later contradicted by the party who made them." **Id.** at 438 (internal footnote omitted). In **Tops**, we noted our longstanding reliance on this principle and stated that "[w]hen a man alleges a fact in a court of justice, for his advantage, he shall not be allowed to contradict it afterwards. It is against good morals to permit such double dealing in the administration of justice."

**In re Adoption of S.A.J.**, 838 A.2d 616, 621 (Pa. 2003) (citation omitted).

Appellant's counsel opted to focus solely on the felony flight to avoid apprehension charge, and her opening statement conceded that this is not a case of mistaken identity.

> The Commonwealth just got up here and told you what they believe the evidence is going to show. Keep in mind throughout this entire trial that the burden remains on the Commonwealth to prove each and every element of each and every offense beyond a reasonable doubt.
>
> **What is being contested** in this case and the question that you are going to have to answer at the end of this trial **is whether or not Marcus Brown fled from police with the intent to avoid apprehension**. That's going to be the issue before you, that's why we're here today having this trial. Did Marcus Brown flee from the police to avoid being apprehended.

- 10 -

N.T., 3/13/25, at 75-76 (emphases added).

We conclude that this concession is sufficiently analogous to a "stipulation[] ... and the like" as discussed in *Tops* and thus "cannot be later contradicted." Therefore, we would alternatively conclude that any appeal of the trial court's ruling would be frivolous for this reason as well. While the burden of having the witnesses identify Appellant in court is surely modest, the fact remains that Appellant conceded this was not a case where identity was in question.

Finally, we have "conduct[ed] a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Dempster*, 187 A.3d at 272. Finding none, we grant the petition to withdraw and affirm the judgment of sentence.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 06/16/2026

- 11 -